UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIMMIE STEPHEN,

    Plaintiff,

v.

H. WILLIAMS; et al.,

    Defendants.

No. C 14-1245 SI (pr)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

## INTRODUCTION

Jimmie Stephen, an inmate at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 complaining of conditions of confinement and applied to proceed *in forma pauperis*. The court ordered plaintiff to show cause why this action should not be dismissed under 28 U.S.C. § 1915(g), and later relied on § 1915(g) to deny pauper status for plaintiff. Plaintiff paid the filing fee and therefore may proceed, although his pleading is still subject to review under 28 U.S.C. § 1915A, which applies to all prisoner actions regardless of fee status. The court has read the amended complaint, is unable to understand large parts of it and therefore requires plaintiff to file a second amended complaint.

## DISCUSSION

A.   <u>Review of Amended Complaint</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

*See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The amended complaint (Docket # 8) covers a very wide variety of topics, including medical care, health concerns, housing, retaliation, disciplinary proceedings, property limitations, the ADA, and failure to protect from other prisoners. Although the general topics can be identified, the court cannot understand almost any of the specific claims, as plaintiff has written a very jumbled narrative with an abundance of incomplete thoughts, unnecessary quotation marks, and inexplicable ellipses. Plaintiff must file a second amended complaint to cure the numerous pleading problems.

First, plaintiff must allege facts stating a legal claim. Since there are so many problems with every claim alleged, the court will provide the elements for the many claims plaintiff identified so that plaintiff may attempt to allege claims in his second amended complaint that provide all the necessary elements.

To allege a § 1983 claim based on deficient medical care, a plaintiff must allege facts showing a serious medical need and deliberate indifference to that need by one or more defendants. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To allege a § 1983 claim based on the failure to protect a prisoner from another prisoner,

similar allegations are necessary. That is, the prisoner needs to allege facts showing (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *See Farmer*, 511 U.S. at 834.

To allege a § 1983 claim for retaliation within the prison context, a plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that [inmate's] protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

To allege a due process claim for prison administrative proceedings, a plaintiff needs to allege facts showing that he was deprived of a protected liberty interest, which usually requires placement in segregated housing for a very long time,[1] and must identify the particular procedural protections he was not afforded when he was deprived of that liberty interest. When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080,

---

[1] The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

3

1100 (9th Cir. 1986). Due process also requires that there be an evidentiary basis for the prison officials' decision. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint*, 801 F.2d at 1104-05.

To allege a due process violation in connection with disciplinary proceedings, the plaintiff must allege the deprivation of a liberty interest of real substance, e.g., placement in segregated housing for a very long time or a loss of time credits, and must identify the particular procedural protections he did not receive. The procedural protections required in a prison disciplinary proceeding include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *See Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). There also must be some evidence to support the disciplinary decision, *see Superintendent v. Hill*, 472 U.S. at 454, and the information that forms the basis for prison disciplinary actions must have some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

To allege a claim for denial of access to the courts, a plaintiff must allege facts showing that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 355. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint. *See id.* at 351.

To allege a claim for a violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 *et seq*. ("ADA"), a plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or

4

receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). The public entity, rather than any individual officer, would be the proper defendant for an ADA claim.

Second, plaintiff must be careful to link one or more defendants to each of his claims. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each involved defendant did or failed to do that caused a violation of his rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). If plaintiff wants to name a supervisor as a defendant, he must allege (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). Those persons in charge of the prison, such as the warden, have no § 1983 liability based merely on the fact that they employ the alleged wrongdoer.

Third, the amended complaint includes allegations about the medical care provided by Dr. Reyes. Those allegations repeat claims he made in *Stephen v. Reyes*, Case No. C 12-3722 SI, in which summary judgment was granted in favor of Dr. Reyes and against him. The claims against Dr. Reyes are dismissed as frivolous because they are duplicative of claims Stephen already litigated and lost. *See Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995)*; Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (duplicative or repetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915 as malicious). Plaintiff should not repeat those claims in his second amended complaint.

Fourth, plaintiff uses the word "conspiracy" repeatedly, but does not allege any facts suggestive of conspiracy. Conclusory allegations of a conspiracy which are not supported by material facts are insufficient to state a claim. *See Simmons v. Sacramento County Superior*

5

*Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "'A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted). A civil plaintiff "must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* (internal citation and quotation marks omitted). A conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). In his second amended complaint, plaintiff may attempt to plead conspiracy-based liability for his claims but must provide non-conclusory allegations sufficient to state a claim based on conspiracy-based liability.

Fifth, the amended complaint complains of too many different problems with too many different defendants. Even though the details of the claims cannot be understood, the court can see that the amended complaint has several defendants that may not be properly joined under Federal Rule of Civil Procedure 20(a). Rule 20(a) provides that all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." In his second amended complaint, plaintiff must allege only claims that are properly joined.

Sixth, plaintiff's writing style leaves the writer guessing as to his meaning in many places. Overall, the amended complaint does not give fair notice of what each defendant is alleged to have done and when he/she did it. Plaintiff must provide a coherent statement of each of his claims. Plaintiff has used ellipses (i.e., usually three dots between words, although plaintiff has generally used only two dots between words) at numerous places in his amended complaint. Ellipses generally indicate that a writer has omitted unimportant words or other material.

Plaintiff should not expect the court to guess what his unstated thoughts are. If plaintiff wants the court to consider something, he must write it out in full. He should not use ellipses in his second amended complaint or any court filing for any purpose other than to indicate the omission of a portion of a quotation. Also, other than to indicate the particular words written or spoken by a person, quotation marks should not be used. It unduly confuses the reader when the document is full of quotation marks that appear not to be quoting anything. Further, sentences should be full sentences, not just talking points that give the gist of what plaintiff is thinking about. If plaintiff is in doubt as to whether a sentence is a full sentence, he should read it aloud to himself to see that it can stand alone as an expression of a complete thought. It is not necessary for a pleading to be a literary masterpiece, but the document must adequately convey to all who read it what a plaintiff's particular claims are so that the court can evaluate those claims and the defendant(s) can respond to those claims. Liberal construction cannot save a document that cannot be understood.

Seventh, plaintiff should begin making arrangements for someone to serve the second amended complaint, if the court permits it to go forward after screening under § 1915A. The Marshal will not be doing service of process, and it will be plaintiff's responsibility to retain someone to serve the summons and second amended complaint on each defendant because he is not proceeding as a pauper.

B.   Miscellaneous Matters

Plaintiff has moved for appointment of counsel to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances

7

requiring the appointment of counsel are not evident. The request for appointment of counsel is DENIED. (Docket # 24.)

Plaintiff has filed a "motion to supplement," in which he indicates he wants to add claims to his pleading. The motion is DISMISSED as unnecessary in light of the fact that this order requires plaintiff to file a second amended complaint. (Docket # 25.) Plaintiff should include his additional claims in his second amended complaint.

## CONCLUSION

Plaintiff's amended complaint is dismissed with leave to amend. Plaintiff must file a second amended complaint no later than **December 12, 2014**, and must include the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his second amended complaint must be a complete statement of his claims, and will supersede his amended complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). If plaintiff does not file a second amended complaint by the deadline, the action will be dismissed.

IT IS SO ORDERED.

Dated: November 10, 2014

_____
SUSAN ILLSTON
United States District Judge