UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIMMIE EARL STEPHEN,

    Plaintiff,

    v.

ALVAREZ, et al.,

    Defendants.

Case No. 14-cv-01245-SI

**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS**

Re: Dkt. Nos. 64, 65, 70

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 in which Jimmie Stephen asserts Eighth Amendment claims against several health care providers based on their response to his injured foot in July 2013. Defendants moved for summary judgment on the ground that Stephen did not exhaust administrative remedies. Stephen did not file an opposition to that motion, and instead filed a cross-motion for summary judgment. For the reasons discussed below, defendants' motion for summary judgment will be granted, plaintiff's cross-motion will be denied and judgment will be entered in defendants' favor.

**BACKGROUND**

A.   <u>The Claims Alleged And Procedural History Of The Case</u>

Stephen alleged in his second amended complaint that he hurt his right foot on July 3, 2013, and sought care for it in the "TTA" on July 5, 2013. Docket No. 30-2 at 7. The TTA allegedly sent him to see nurse de la Cruz, who refused to see him; Stephen was told to fill out a sick call slip. On July 9, 2013, Stephen went back for medical care, where he "was denied again by 'B. Honey.'" *Id.* On July 10, 2013, he was seen by Dr. Alvarez and was told that his right foot was broken in four places. Dr. Alvarez allegedly failed to adequately treat Stephen because,

1    although he gave him a cane and a boot, he did not provide an order for Stephen to receive a
2    bottom bunk, and Stephen had to sleep on the top bunk for another 30 days. *Id.* Stephen allegedly
3    passed by de la Cruz as he entered the hospital and Dr. Espinoza walked by him twice without
4    providing any medical care. *Id.* Dr. Espinoza allegedly continued to deny him a bottom bunk
5    chrono, which he needed due to his medical problems. *Id.* at 9.

6    The court determined that, liberally construed, the *pro se* second amended complaint stated
7    a cognizable claim for deliberate indifference to plaintiff's medical needs against nurse de la Cruz,
8    nurse Honey, Dr. Alvarez and Dr. Espinoza. Docket No. 33. Other claims and defendants were
9    dismissed.

10   Stephen, whose *in forma pauperis* application was denied pursuant to 28 U.S.C. § 1915(g),
11   was instructed to serve process on the defendants. (Docket No. 20; Docket 33 at 6-7.) Eight
12   months later, and after a second warning of the need to serve her, the court dismissed defendant de
13   la Cruz because Stephen failed to accomplish service of process on her. Docket No. 62.

14

15   B.   Administrative Exhaustion Facts
16   The following facts are undisputed unless otherwise noted:
17   Stephen filed an inmate appeal which he dated July 5, 2013 (SQ HC 13038120). In that
18   inmate appeal, he wrote: "This is a staff complaint under P.C. '832.5' for denial of treatment on 7-
19   5-13 on nurse de la Cruz for 'serious medical' on right foot & toes as was not seen until 7-10-13.
20   As told on 7-5-13 to fill out 7362 for medical treatment when right foot, toes, broken in 4 places
21   based on x-rays of 7-10-13." Docket No. 66-2 at 4, 6. In the "action requested" portion of the
22   form, Stephen wrote:  "(1) reason treatment denied on 7-5-13 after sent by TTA[,] (2)
23   investigation into this matter, (3) damages." *Id.* at 4.

24   At the second level, the response from prison officials on October 2, 2013 was that his
25   allegation of staff misconduct had been reviewed and "referred for an appeal inquiry," and that an
26   appeal inquiry has been or was being conducted. Docket No. 66-2 at 8. That second-level
27   decision further stated that the results of any inquiry would not be shared with him because
28   personnel matters were confidential in nature. The response also stated: "Allegations of staff

misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's level of Review. Once a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted." *Id.* at 9. The health care inmate appeal (SQ HC 13038120) was converted to a staff complaint against de la Cruz on September 19, 2013, assigned a new log number (SQ SC 13000296), and denied at the third level on November 1, 2013. *See* Docket No. 66 at 3; Docket No. 66-2 at 2, 5. The third-level decision stated that the supervisor's inquiry into the staff complaint had included interviews of Stephen, nurse de la Cruz, nurse Honey and C/O Kunes, as well as a review of Stephen's health records. *Id.* at 2.

Stephen filed another inmate appeal, which he apparently dated August 30, 2013 (SQ HC 13038261). Docket No. 66-3 at 3. In this appeal, he wrote: "This is a staff complaint under P.C. 832.5 upon 'Dr. Espinoza' based on denial of 'medical treatment' on 7-5-13 when plaintiff Stephen first went to 'TTA' and was sent to west block medical[. W]hile sitting at medical in front of main entrance for 2 hours Dr. 'Espinoza' walked by plaintiff twice this day 7-5-13" without treating him, and Stephen was not treated until July 10, 2013. Docket No. 66-3 at 3, 5. In the "action requested" part of the form, Stephen wrote: "(1) investigation of acts by Espinoza of 7-5-13 at about 10 to 12 o'clock AM. (2) job description on 7-5-13 at about 10 to 12 noon. (3) Other relief." *Id.*

This inmate appeal (SQ HC 13038261) was rejected and returned to him by the prison's health care appeals office on August 12, 2013 with a letter explaining that the appeal was being returned because he had "failed to sign the . . . form with the actual date of submission." Docket No. 66-3 at 2. (The appeal is dated August 30, 2013, but is marked as having been received on August 4, 2013 and rejected on August 12, 2013.) The rejection letter directed the inmate to complete the form and resubmit the appeal, along with the rejection letter, within 30 days to the health care appeals office for continued processing. Docket No. 66-3 at 2. The letter also informed the prisoner that "[t]his screening action may not be appealed unless you allege that the above reason(s) is inaccurate. In such case, return this form and your appeal to the Health Care

3

1   Appeals Office with the necessary information." *Id.* Prison officials have no record of Stephen
2   resubmitting that appeal (SQ HC 13038261), or appealing the procedural rejection of it.

3         Stephen attached to his cross-motion for summary judgment two other inmate appeals for
4   which he received a third-level decision. He filed an inmate appeal on September 12, 2013 (SQ
5   HC 13038410). Docket No. 70-2 at 2-4. This inmate appeal complained about several medical
6   issues but not the July 2013 care or lack thereof. Among other things, he requested the names of
7   nurses who had seen him on September 10 and 11, 2013. Docket No. 70-2 at 4. The first-level
8   response dated October 25, 2013 provided that information, i.e., nurses Neal and Bernhardt had
9   seen him on those dates. *Id.* at 6. He received a third-level decision on November 18, 2013.
10  Docket No. 70-2 at 8-10.

11        Stephen also filed an inmate appeal on or about April 26, 2013, more than two months
12  before his foot injury in July 2013 (SQ HC 13037773). Docket No. 70-3 at 2. The second-level
13  response was dated July 1, 2013, and mentioned that this inmate appeal was filed on or about
14  April 26, 2013. *See* Docket No. 70-3 at 2. The third-level decision denied this appeal on October
15  30, 2013. According to the third-level decision, the relief requested was (a) a "recording[] of
16  arthritis diagnosis as told by providers on January 29, 2013" and (b) to receive a comprehensive
17  accommodation chrono for a bottom bunk. Docket No. 70-3 at 4.

18        Stephen filed other inmate appeals, but none were about the events alleged in the second
19  amended complaint and had (a) received a decision at the third level of review or (b) been fully
20  granted at a lower level of review.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

23        Summary judgment is proper where the pleadings, discovery and affidavits show that there
24  is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
25  law." Fed. R. Civ. P. 56(a). The court will grant summary judgment "against a party who fails to
26  make a showing sufficient to establish the existence of an element essential to that party's case,
27  and on which that party will bear the burden of proof at trial . . . since a complete failure of proof
28  concerning an essential element of the nonmoving party's case necessarily renders all other facts

4

1   immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must now be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id*. If material facts are disputed, summary judgment should be denied, and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170-71.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint

5

1  as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746,
2  plaintiff stated under penalty of perjury that contents were true and correct, and allegations were
3  not based purely on his belief but on his personal knowledge).

## DISCUSSION

A. <u>Defendants' Motion For Summary Judgment</u>

    1. <u>Exhaustion Requirements</u>

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, No. 15-339, slip op. at 5 (U.S. June 6, 2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the California Department of Corrections and Rehabilitation or his designee. *Id.* § 3084.1(b), § 3084.7(d)(3). Inmate appeals regarding health care matters are processed slightly differently from non-health care appeals, although they also

6

must proceed through the three formal levels. The "Office of Appeals receives reviews and maintains all third level inmate appeals concerning non-health care issues." Docket No. 66 at 2. First- and second-level health care appeals are processed by staff located at each prison. When the inmate pursues the health care appeal to the third level, it is handled by the inmate correspondence and appeals branch (ICAB). The ICAB is part of the California Correctional Health Care Services (CCHCS), and "receives, reviews, and maintains all health care appeals accepted for the third and final level of review in the inmate health care appeals process, and renders decisions on such appeals." *Id.*

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).

Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); *Sapp*, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's

1 procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison
2 to the nature of the wrong for which redress is sought'"). Those cases are distinguishable,
3 however, because they did not address the regulation as it existed at the time of the events
4 complained of in Stephen's second amended complaint. Section 3084.2 was amended in 2010
5 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments
6 included the addition of subsection (a)(3). *See* Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-
7 12 providing operative date of amendment). *Wilkerson* and *Sapp* used the pre-2011 version of
8 section 3084.2, as evidenced by their statements that the regulation required the inmate to
9 "describe the problem and the action requested" – a phrase that does not exist in the version of the
10 regulation in effect in and after 2011. *Griffin* is distinguishable because it discussed the Maricopa
11 County Jail administrative remedies rather than the CDCR's administrative remedies. Whatever
12 the former requirements may have been in the CDCR and whatever requirements may still exist in
13 other facilities, since January 28, 2011, the operative regulation has required California prisoners
14 using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their
15 administrative appeals. Exhaustion of administrative remedies may occur if, despite the inmate's
16 failure to comply with a procedural rule, prison officials ignore the procedural problem and render
17 a decision on the merits of the grievance at each available step of the administrative process.
18 *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016); *e.g., id.* at 659 (although inmate failed to
19 identify the specific doctors, his grievance plainly put prison on notice that he was complaining
20 about the denial of pain medication by the defendant doctors and prison officials easily identified
21 the role of pain management committee's involvement in the decision-making process).

23     2. <u>Analysis</u>
24     Defendants have moved for summary judgment on the ground that Stephen did not
25 properly exhaust administrative remedies because he did not file any inmate appeal that received a
26 decision from the third, or highest, level in the inmate appeals system about the defendants'
27 conduct giving rise to the claims in his second amended complaint. They have demonstrated that
28 the only inmate appeal that he filed about the events giving rise to his second amended complaint

1   that received a decision at the third, or highest, level was against nurse de la Cruz, but she has
2   been dismissed from this action. The one other inmate appeal that pertained to the July 2013
3   events mentioned only Dr. Espinoza and was screened out at the first level, and never received a
4   decision at the third level.
5          Defendants have carried their burden to demonstrate that there were available
6   administrative remedies for Stephen and that Stephen did not properly exhaust those available
7   remedies. The undisputed evidence shows that California provides an administrative remedies
8   system for California prisoners to complain about their conditions of confinement, and that
9   Stephen used that California inmate appeal system to complain about the events that give rise to
10  his second amended complaint. The undisputed evidence also shows that the only inmate appeal
11  filed pertaining to the July 2013 events that received a decision at the third level did not assert any
12  wrongdoing by the remaining defendants and did not mention any of them by name or title, even
13  though Stephen was required to do so by the regulation in order to properly exhaust administrative
14  remedies. Cal. Code Regs. tit. 15, § 3084.2(a)(3). As a result of Stephen's failure to identify the
15  remaining defendants as wrongdoers in that inmate appeal, Stephen did not "provide the level of
16  detail required by the prison's regulations," *Sapp*, 623 F.3d at 824, and therefore did not properly
17  exhaust his administrative remedies against any remaining defendant. *See Ngo*, 548 U.S. at 90.
18  By failing to provide this information, Stephen failed to provide sufficient information to allow
19  prison officials to take appropriate responsive measures. Not only did he not identify the role of
20  the other defendants, Stephen wrote that his inmate appeal was "a staff complaint" against nurse
21  de la Cruz, further suggesting that only her conduct was at issue. *See* Docket No. 66-2 at 4. The
22  fact that the prison officials resolved the appeal that Stephen had specifically marked as a "staff
23  complaint" against nurse de la Cruz does not suggest that they "ignore[d] the procedural problem"
24  of Stephen not identifying the other medical care providers; prison officials had no reason to
25  suspect from the inmate appeal filed that there was a procedural problem of unidentified other
26  wrongdoers. They did not choose to ignore a problem of which they were not made aware. *Cf*
27  *Reyes*, 810 F.3d at 658 (exhaustion occurred where "prison officials ignore[d] the procedural
28

problem and render[ed] a decision on the merits of the grievance").[1] Defendants have carried their burden to show that Stephen did not properly exhaust his administrative remedies because he did not name the remaining defendants in his only inmate appeal that received a third-level decision about the events at issue.

Once defendants met their initial burden, the burden shifted to Stephen to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172. Stephen has made no such showing. Stephen argues that he did not know the name of nurse Honey or Dr. Alvarez until a later date, but his inmate appeal against nurse de la Cruz (i.e., SQ HC 13038120 / SQ SC 13000296), does not even note their existence. He did not, for example, state that other unknown persons denied him medical care or even refer to them by title (e.g., "a nurse" and "a doctor"), an alternative the regulation indicates would be adequate. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3). A reasonable person reading his inmate appeal against nurse de la Cruz would have no idea that Stephen also intended it to complain about the conduct of other prison officials. Stephen argues that he exhausted as to nurse Honey because she was interviewed for the staff complaint against nurse de la Cruz. Although nurse Honey may have been interviewed, that would not suffice to exhaust administrative remedies against her because the inmate appeal did not mention her or indicate that she had done anything to Stephen's dissatisfaction. Stephen received third-level decisions in two other inmate appeals (SQ HC 13038410 and SQ HC 13037773), but neither of

---

[1] In *Reyes*, the California prisoner whose health care appeal concerning inadequate pain management failed to identify two prison doctors, as required by CDCR's regulation, nevertheless exhausted his claim of deliberate indifference to serious medical needs against the two prison doctor defendants because the appeal was decided on its merits at all levels of review. *See id.* at 656-57. But this does not mean that a claim decided on the merits necessarily exhausts as to all possible defendants. There must be a sufficient connection between the claim in the appeal and the unidentified defendant(s) to provide prison officials with "notice of the alleged deprivation" and an "opportunity to resolve it." *Id.* at 659. In *Reyes*, the two unidentified prison doctors had a sufficient connection with plaintiff's claim in the appeal concerning inadequate pain management because prison officials plainly knew that the two unidentified prison doctors served on the pain management committee that had determined that plaintiff should not receive narcotic pain medication. *See id.*

those complained of the events that give rise to his second amended complaint. Stephen also argues that he was told at some point that nurse Honey's name was Bonner, but he does not show that he exhausted any inmate appeal using that name either. Stephen has not met his burden to show that administrative remedies were effectively unavailable to him.

The regulation that had been in effect for more than two years before the incident plainly required the inmate to list the name of the staff member (or to provide other identifying information, such as title or position) and to describe his/her role in the incident. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3). Stephen did not do so and therefore failed to properly exhaust his administrative remedies. *See Ngo*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *see, e.g. Parks v. Chappell*, 2015 WL 3466280 (N.D. Cal. 2015) (Chen, J.) (granting summary judgment in warden's favor because inmate appeal about injury-causing event did not mention warden by name or title); *Martinez v. Swift*, 2015 WL 1349525, *2 (N.D. Cal. 2015) (Seeborg, J.) (granting summary judgment for nonexhaustion because the grievance "does not mention [defendant], or describe with any specificity his actions or words" and therefore did not comply with § 3084.2(a)(3)); *Panah v. State of Cal. Dep't of Corr. and Rehabilitation*, 2015 WL 1263494, *9-*10 (N.D. Cal. 2015) (Freeman, J.) (even if plaintiff's failure to pursue inmate appeal to highest level is excused, he failed to properly exhaust his claim against the warden because his inmate appeal did not name the warden or describe the basis for his liability); *Gray v. Smith*, 2015 WL 875482, *2-*3 (N.D. Cal. 2015) (Alsup, J.) (granting summary judgment for nonexhaustion where inmate appeal described an incident at the prison but did not name the warden and did not describe a widespread practice or that the warden knew of the incident and failed to stop it).

Bearing in mind that defendants have the ultimate burden of proof on the defense and viewing the evidence in the light most favorable to Stephen, the court concludes that defendants are entitled to judgment as a matter of law on the affirmative defense that Stephen failed to exhaust administrative remedies for his Eighth Amendment claims. The action is therefore dismissed without prejudice to Stephen filing a new action alleging those claims if he ever

11

1 properly exhausts his administrative remedies.

### B. Plaintiff's Motions

After defendants filed their motion for summary judgment, Stephen filed a cross-motion for summary judgment rather than an opposition to defendants' motion. In resolving defendants' motion, and in considering whether a triable issue of fact exists, the court has reviewed the evidence and argument in the cross-motion. The evidence and argument in the cross-motion do not defeat defendants' motion. Having determined that defendants are entitled to judgment as a matter of law due to plaintiff's failure to exhaust administrative remedies, plaintiff's cross-motion for summary judgment is necessarily DENIED. (Docket No. 70.)

At about the time defendants filed their motion for summary judgment, Stephen filed a "request for 'FRCP' '26 & 34' 'production' of 'documents' by 'order'" to obtain de la Cruz's address. (Docket No. 64.) Stephen had not propounded any discovery requests on defendants, so there was no basis for a motion to compel compliance with a discovery request. Stephen was aware of the need to serve a proper discovery request because, less than two months before he filed this discovery motion, the court had cautioned Stephen that he had to comply with the Federal Rules of Civil Procedure for discovery and that the court would not entertain a motion to compel unless he did so. (Docket No. 62.) The motion for discovery is DENIED. (Docket No. 64.) The court also has considered whether the information sought in the improper discovery motion has any bearing on the nonexhaustion of administrative remedies issue raised in defendants' motion for summary judgment and concludes that it does not.

/ / /

/ / /

12

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. (Docket No. 65.) The action is dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies before filing this action.

Plaintiff's cross-motion for summary judgment and discovery motion are DENIED. (Docket No. 64 and 70.)

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:   June 7, 2016

_____
SUSAN ILLSTON
United States District Judge